## Illinois Steel Company v. John Bycyznski, Adm'r.

·1. PRACTICE—*Presumption Can Not be Based upon a Presumption.*—A presumption can not be based upon another presumption, and made a ground of recovery.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded. Opinion filed January 27, 1903.

GARNSEY & KNOX and WILLIAM DUFF HAYNIE, attorneys for appellant.

S. J. DREW and J. W. DOWNEY, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Paul, otherwise called Peter, Bonkoski, was killed by the explosion of a mixer ladle on the evening of December 17, 1900, while he was in the employ of the Illinois Steel Company at Joliet. His administrator brought this suit to recover damages for his death, for the benefit of his next of kin. More than two years after the accident plaintiff amended his declaration. Defendant pleaded not guilty, and also pleaded the statute of limitations to the amended third count. A demurrer was sustained to the last named plea. At the trial defendant offered no proof. The court instructed the jury there was no evidence proving the first, second and fourth counts of the declaration. The case was submitted to the jury under the third count. Plaintiff had a verdict and a judgment for $2,000 and defendant appeals.

The proof shows that a mixer ladle is kettle-shaped and peaked at the bottom, and is made of boiler iron on the outside and a fire proof lining on the inside, with bricks between. Each mixer ladle is five or six feet high and four or five feet across at the top, and will hold eight or ten tons of molten iron. It is used to convey molten iron from the mixer, where it is stored, to the convertor, where it is to be subjected to other processes. The ladle rests on bear-

ings, and may be tipped over to pour out the liquid con-
tents through a nose or spout on one side. The ladle also
rests on a truck by means of which it is moved about the
mill on iron rails. Foreign matter always rises to the top
of melted iron. It is called graphite and kish, and also by
the general term slag. It is not fluid and is lighter
than the molten metal. If the slag has become a large
chunk it is often skimmed off before or when the molten
metal is poured out of the ladle. But some slag adheres to
the rim of the ladle, and molten iron chills and builds on
it, and this combination on the rim is called skull. Some
slag also remains in the bottom or at the side of the ladle
when the liquid is poured out. Every mixer ladle becomes
so clogged by skull and slag that about every twelve hours
on the average it is necessary to send it to a place in the
yard called the ladle repair shop to have the skull and slag
removed, as otherwise it would become so thick as to seri-
ously diminish the capacity of the ladle, and to impede the
free flow of the liquid through the nose.

On the evening of December 17, 1900, Otto E. Stadler
was in charge of the ladle repair shop, and Bonkoski was
a laborer there under him. The ladle in question was
brought into the repair shop. It was hot, as they gener-
ally were when brought there. Bonkoski was engaged on
other ladles. Stadler got upon the truck of this ladle,
shaded his face with buckskin mittens which he wore in
that business, looked into the ladle, and saw a pail or a pail
and a half of slag on the front side of the ladle directly
under the nose, extending up from the bottom. This slag
had been left in the ladle when the liquid was poured out,
and had partly fallen back to the bottom when or after
the ladle was restored to an upright position after the
molten metal had been poured out. It was necessary to
cool the ladle before the men could work at cleaning it out.
This was customarily done by filling the ladle with water.
Thirty or thirty-five feet away was a hydrant to which a
hose was attached for that purpose. Stadler placed the
end of the hose in the ladle, turned on the water at the

hydrant, and then got upon the frame of the ladle and watched the water. This hose was one and one-half or two inches in diameter, so that it must have taken considerable time to fill this large receptacle. When the water was within about a foot of the top Bonkoski came, got on top of this ladle and took charge of the hose, and Stadler went to the engine, which was thirty-five or forty feet distant, in an engine room. There was a hook on the outside of the ladle at the bottom. When it was desired to tip the ladle to empty it, a chain was attached to this hook. This chain was connected with mechanism operated by the engine. After the ladle was filled with water Bonkoski went to the hydrant and turned off the water, then took the hose out of the ladle, and called out to Stadler to turn the ladle over. Stadler started the engine and tipped the ladle. It was Bonkoski's duty to signal Stadler when the ladle was tipped enough to let all the water out. When this was nearly accomplished, but before Bonkoski had given the signal to stop, the ladle exploded and Bonkoski was thereby killed.

The amended third count set out in detail the facts about the method of using and repairing mixer ladles, and further averred that when a mixer ladle was taken to the repair shop, it became defendant's duty, before discharging water into it, to see it was sufficiently cooled and in a proper condition for the introduction of water into it for the purpose of cleaning it, and to inspect the ladle to ascertain whether the introduction of water into it would cause it to explode; and it charged that defendant did not cause such inspection to be made, but caused water to be discharged into the ladle when the same was of a very high temperature and when the metal in the bottom of the ladle was not solidified or hardened; that by reason of the introduction of water into the ladle it suddenly exploded, killing Bonkoski, etc.

The negligence charged is, therefore, first, omission to inspect the ladle to see whether the introduction of water into it would cause it to explode; and, second, discharging

water into the ladle when the ladle was hot and when the metal in the bottom of the ladle was not solidified or hardened.

There is no proof there was any molten metal under the slag. There is no proof that Stadler should have known of the presence of liquid under the slag, if it did exist, or of any fact which should have caused him, in the exercise of prudence, to ascertain whether there was molten metal under the slag. There is no proof that this ladle was in any other than the usual condition in which ladles came to the repair shop. The same course was pursued with this ladle as always had been followed with mixer ladles in preparing them to be scraped and repaired, and none had ever exploded before. It was customary to fill the ladle with water to cool it so that the men could work upon it. Certainly the water did not directly cause the explosion, for then it would have occurred as soon as the first water was poured in, while Stadler was at the ladle. Plaintiff can not support the verdict on the theory that as the slag cooled it contracted and opened and permitted water and hot liquid iron to meet, for Spencer, plaintiff's witness of most experience, testified that the slag formed on defendant's ladles did not crack; that he never knew slag to crack which was composed of graphite or kish and that he had put water in vessels a great many times when there was slag in them, meaning, evidently, when the vessels were hot, as the purpose of the water was only to cool the vessels. Plaintiff argues the slag should have been removed before the ladle was sent to the repair shop; but the third count does not charge any such duty, and Spencer testified the ladle was often sent to the repair shop with slag in it, and sometimes also a very little molten metal; and that a ladle never exploded in the fifteen years he had been employed at this convertor. The proof seems to show that the ladle was sent to the repair shop in the customary manner and condition. We are virtually asked to infer or presume that there was molten metal under the slag as it rested against the front side of the kettle from the bottom;

that the slag had formed a crust, which held the metal underneath it in that position and protected it from the water while the ladle was being filled; that when the ladle was tipped to let the water run out the weight of the molten iron broke through the crust of the slag and the molten matter dropped into the water, and that this caused the explosion. A presumption can not be thus based upon another presumption, and made a ground of recovery. (Globe Accident Ins. Co. v. Gerisch, 163 Ill. 625.) The only solid basis of proof underneath this verdict is that the ladle did explode and the explosion killed Bonkoski. That explosion had some cause. But the record does not show that cause was the negligent act or omission of defendant charged in the third count. It may have been purely accidental, or from some cause other than that alleged. We are of opinion that the proof does not sustain the verdict. Plaintiff failed to get in some of the testimony he offered on vital points, and we conclude that we should remand the cause for another trial.

The original third count charged that defendant caused water to be discharged into said ladle when the same was of a very high temperature and " when the metal in the bottom of the said ladle was entirely solidified and hardened." The amendment made the quoted words read, " when the metal, slag or skull, in the bottom of the said ladle was not solidified or hardened." The negligence charged was omitting to ascertain whether the introduction of water would cause the ladle to explode, and discharging the water into the ladle. The amendment changed the conditions existing within the ladle, but left the same charges of negligence standing, viz., discharging water into the ladle, and failing to ascertain whether that would cause it to explode. We conclude the amendment did not state a new cause of action. The demurrer therefore was properly sustained to the plea of the statute of limitations.

The judgment is reversed and the cause remanded.