## Illinois Central Railroad Company v. Wiliam C. Kerr, Administrator.

### Gen. No. 4,611.

1. PASSENGER—*when carrying beyond station does not render carrier liable for death of.* Held, from the facts of this case, that the death of a passenger did not proximately result from her being wrongfully carried beyond her station and that the carrier was not liable as such death was produced by other causes.

2. NEGLIGENCE—*when carrier not liable for.* A carrier of passengers is only liable for the direct and proximate results of the negligence complained of or for those results which can reasonably be anticipated to flow therefrom.

3. PRESUMPTION—*when will not sustain liability for negligence.* A liability for negligence will not be sustained where predicated upon one presumption based upon another.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Stephenson County; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1905. Reversed, with finding of fact. Opinion filed March 10, 1906.

J. H. STEARNS, for appellant; J. M. DICKINSON, of counsel.

DOUGLAS PATTISON, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court. Some five years before the death of Mrs. Nellie Kerr, an operation was performed upon her, by which the abdominal region was laid open in front, from the navel downward. At that or some later time, her left ovary was removed. She was in ill health thereafter, her chief trouble being in the region of the bowels. From January 19 to March 22, 1904, she was under treatment by Dr. Stealy, of Freeport, who found her complaining of pain in the lower left abdomen, with stomach trouble. He found symptoms which he attributed to adhesions, due to previous trouble in the abdomen. This was accompanied by constipation. He used massage, electricity and internal medicine; this treatment

being designed to produce absorption of the adhesions. On September 9th, she came to Dr. Stealy again, and was very much worse in every respect. She had vomiting at times, and much gas in the bowels, with pain and distention. He found a mass in her left side as large as his two fists. The symptoms of adhesion had increased so much as to give very marked evidence of obstruction of the bowels, though not of complete strangulation. Dr. Stealy advised a surgical operation. She went home to consult her husband, and did not return to Dr. Stealy. About the middle of September, she went to the sanitarium of Dr. White at Freeport. He found distress in the bowels, and concluded there were chronic adhesions along the line where the abdomen had been opened and closed again at her former operation. He found a distention of the colon, and concluded that part of the intestines adhered to the front wall of the abdomen. The patient was constipated. He used injections, salt packs, and massage of the abdomen, the purpose of the massage being to overcome the adhesions. She had great tenderness all over the abdomen. She remained at the sanitarium under this treatment some six or seven weeks, and then went to her home, and came to the sanitarium occasionally for treatment. On the morning of Tuesday, November 22, 1904, she was at the sanitarium, and was examined by Dr. White. The patient was laid upon a table and Dr. White manipulated the abdomen bi-manually, that is, externally and through the vagina, and examined the womb and remaining ovary. This was a special examination, for the purpose of determining whether it would be worth while to continue the massage treatment, and also to make a record of her condition. He found the distress through the bowels relieved, and concluded that the treatment she had received was releasing the adhesions, and that her general condition was improved. He did not discover anything that morning of an acute nature, nor any symptoms of a stoppage of the bowels. He testified he did not get time to treat her that morning, as she had to go home on the train.

Wadham, the home of Mrs. Kerr, is about seventeen miles west of Freeport on the Illinois Central Railroad. She left

Freeport for home that morning about half past eleven on a westbound passenger train, which was somewhat late. She had a commutation ticket, good between Wadham and Freeport, which the conductor punched. The first station west of Wadham was Nora and the next Warren. In the seat with her was Mr. Deam of Warren, with whom she was acquainted. Wadham and Nora were flag stations where that train stopped only on signal. The conductor failed to give the signal to stop at Wadham, and the train went through that village at its usual speed of from 35 to 50 miles per hour. When she exclaimed that she was being carried by her station, either Deam or the brakeman went forward and notified the conductor. The conductor went back and talked to Mrs. Kerr. Deam testified that there was a car between the ladies' car in which Mrs. Kerr was riding and the smoker in which the conductor was found, and that as they went back Mrs. Kerr had left the car in which she had been riding and had come forward into the next car, and was met by the conductor there; but the clear preponderance of the evidence is that there was no such car in the train; that there was but one car between the diner and the smoker, and that Mrs. Kerr was riding in that car, and was found by the conductor in that car. She talked with the conductor, and stood in the aisle leaning against the seat. He expressed his regret, and told her the only thing that he could do was to buy her a ticket and send her back on the first train, and that his train did not stop at Nora, and she had better go on to Warren, and that Warren was a larger town and a nicer place for her to stay in till the train came than Nora. She replied that she had relatives both at Nora and at Warren, but she preferred to get off at Nora if he would stop the train, and he told her he would do so. During this conversation, she told the conductor she would make him trouble for carrying her by. The conductor stopped the train at Nora, and she got off there, and he paid the agent for a return ticket for her, and it was delivered to her. The waiting room was warm. She went in and sat down. The train left, and the station agent started for his dinner at four minutes after noon. When he returned at one o'clock, she was gone. She

went to a store and telephoned or caused a telephone message to be sent to her sister, Miss Mahon, who lived with her at Wadham, to come after her. Miss Mahon drove to Nora with a horse and covered buggy and at 1:30 p. m. found her at a store in Nora, and took her home, a distance of four miles. Where Mrs. Kerr was or what happened to her from noon till 1:30 p. m. is not otherwise disclosed.

Mrs. Kerr complained all the way home from Nora to Wadham of pain across the bowels. When she reached home she was suffering a great deal, and gradually grew worse. Next morning Dr. Kreider was called. He found her pulse feeble, features shrunken, extremities cold, and she had serious nausea. He used hot applications and injections, and made other efforts to relieve her, and came several times that day. Dr White of Freeport came early Thursday morning. He found the abdomen distended and enlarged, and the patient vomiting every few minutes, and vomiting matter from the smaller intestines. She had spasms with intense suffering. Her lower bowels were completely paralyzed. There was no reaction from the intestinal canal. She was attended by the local physician several times that day. Early next morning she was taken to Freeport on a train, and taken to a hospital. She had had no passage of the bowels since her sister met her Tuesday at Nora. Dr. White and others performed an operation, opening the abdominal tract. A pint or more of fluid came forth, indicating peritonitis. They opened the intestines and let out the gas. They found that the intestines adhered to the line of the cut made at the operation five years before. Deeper in the abdomen they found an adhesive band across the pelvis. The intestines had slipped behind this band and twisted, producing strangulation or a complete stoppage. From nine to twelve inches of the intestines were practically gangrened. They had much difficulty in keeping the patient alive during the operation. After the adhesive band had been broken, the bowels resumed their usual functions. The attending physicians cleansed the abdomen, made an artificial opening from the exterior of the body into the intestine to let out gas and putrid material, and closed

the rest of the opening, taking such precautions as they could for the benefit of the patient. She died that afternoon. The immediate cause of her death was the strangulation of the intestine, and the collapse and peritonitis attending the strangulation.

William C. Kerr was the husband of Nellie Kerr. He took out letters of administration upon her estate, and then brought this suit against the Illinois Central Railroad Company, to recover damages for causing her death, and thereby depriving her next of kin of their means of support. The declaration stated the relation of carrier and passenger, and that Mrs. Kerr was carried past her station to Nora, as above set out. The first count averred that she was made sick by the excitement and exposure caused by her being carried beyond her destination, and died therefrom; and that carrying her beyond her destination was the direct and proximate cause of her sickness and death. The second count charged that by reason of her being carried by Wadham and being compelled to return thereto, she sustained great mental excitement, nervous shock and physical exposure, whereby she immediately became sick, and died therefrom; and that carrying her beyond her destination was the direct and proximate cause of her sickness and death. Defendant pleaded the general issue. There was a jury trial. Plaintiff had a verdict of $1,000 and remitted $5 therefrom. A motion by defendant for a new trial was denied, and plaintiff had judgment for $995. Defendant appeals.

Ingenious theories by expert witnesses and by counsel are relied upon to sustain this judgment. We are convinced that the proof does not warrant the conclusion that the railroad company caused her death. There was no proof of any jolting or jarring of the train between Wadham and Nora. Mrs. Kerr received no physical injury on the train. She was treated with entire courtesy by the train crew, was furnished a return ticket and a warm and comfortable room in which to wait. She did not ask or appear to need any other or better accommodation. The only proof her wishes were not wholly complied with after the train failed to stop

.at Wadham is that Deam testified the conductor was asked to back up to Wadham, and did not do it.

Three reasons occur to us why this judgment cannot be sustained.

1. We are asked to presume that this train jolted and jarred as it passed from Wadham to Nora, and that Mrs. Kerr, as she walked forward to the next car (if she did pass to another car), and as she stood and talked with the conductor, was thereby jolted and jarred; and then we are asked to presume that this jolting and jarring caused from nine to twelve inches of her intestines to slip behind this adhesive band and become strangulated. On another theory of plaintiff, we are asked to presume that being carried by her station produced in Mrs. Kerr a high state of nervous excitement, when the substance of the proof of excitement or nervousness most favorable to plaintiff is only that "She was wrought up considerable, and she was nervous, the same as anyone would that was disappointed or was left somewheres, and she was a good deal more that way because she was tired out;" "she was wrought up in a pretty high state, from the idea of having to go to Nora." Then we are asked to presume that this high state of nervous excitement caused the intestines to get wedged in behind the adhesive band. Upon any theory plaintiff may adopt, a presumption must be based upon a presumption, or an inference upon another inference, in order to find any possible ground for holding that by the act of carrying Mrs. Kerr past her station the railroad company caused her death. Such a method of arriving at a conclusion of fact is not admissible. The second presumption in such a chain cannot be indulged to sustain the essential allegations of the declaration upon which the charge of liability is based. Globe Accident Ins. Co. v. Gerisch, 163 Ill., 625; Condon v. Schoenfeld, 214 Ill., 226; Illinois Steel Co. v. Bycyznski, 106 Ill. App., 331; Bycyznski v. Ill. Steel Co., 115 Ill. App., 326.

2. The second reason is in part a re-statement of the first. There is no proof which justifies the conclusion that the act of the company in carrying Mrs. Kerr by her station caused

her death, or even contributed thereto.  It is possible she was jolted and jarred, and that such jarring forced her intestines back of this adhesive band and produced strangulation.  It is possible the jolt of stepping off the train caused it.  It is possible it was caused by the bi-manual manipulation of her abdomen that morning by Dr. White.  The final impetus may have been given while she was going to the depot in Freeport, or after she left the depot at Nora. A theory advanced by one or more experts suggests that these nine to twelve inches of intestines may have become strangulated behind this adhesive band by a gradual process; that they may have slipped behind the band to some extent a long time before her death, so as to produce partial constriction and the constipation complained of, and that this gradually increased till the final moment of complete strangulation; and that no one can tell that any particular movement or other cause completed the closing of the bowels.

3. But if this strangulation did occur between Wadham and Nora, we regard it as an unanswerable objection to this verdict that the sickness and death of Mrs. Kerr was not the direct and proximate result of her being carried by her station, and that her death could not reasonably be anticipated to result therefrom; and a defendant is liable, in such a case, only for the direct and proximate results, or for those results which could reasonably be anticipated to flow from the negligence complained of.   The cases illustrative of that rule are collected and considered in Braun v. Craven, 175 Ill., 401.   It is to be remembered plaintiff is not suing for a breach of the contract to carry Mrs. Kerr from Freeport to Wadham.   She may have had a cause of action for that breach of contract, and may have been entitled to damages for loss of time and for any loss suffered by her from inability to meet some important engagement and the like. But the case here charged is that the railroad company caused her sickness and death, by carrying her four miles beyond her station.   We consider it obvious that this verdict is wholly unwarranted by the proof.   The judgment is therefore reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment of court: We find that the sickness and death of Mrs. Nellie Kerr, plaintiff's intestate, was not caused by any act or neglect of the defendant charged in the declaration.